

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**WILLIAM DOUG MITCHELL, #16956-078** §

**VS.** § **CIVIL ACTION NO. 4:14cv132**
**CRIM. NO. 4:10CR00057-026**

**UNITED STATES OF AMERICA** §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Movant William Doug Mitchell, an inmate confined at F.C.I. Seagoville, proceeding *pro se*, brings this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion was referred for findings of fact, conclusions of law and recommendations for the disposition of the motion.

### Procedural History of the Case

On March 10, 2010, a grand jury returned an indictment charging Mitchell and thirty-nine others with various offenses arising from their participation in a mortgage fraud scheme. A jury found him guilty of one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349, and two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. On March 27, 2012, Mitchell was sentenced to a total term of 120 months of imprisonment. The conviction was affirmed. *United v. Mitchell*, 533 F. App'x 387 (5th Cir. 2013).

The present motion was filed on March 4, 2014. Mitchell submitted a memorandum of law in support of the motion. The Government filed a response (docket entry #11) on October 8, 2014.

### Factual Background of the Case

The Fifth Circuit provided the following discussion of the factual background of this case:

> The evidence adduced at trial showed that, between February 2004 and July 2007, forty individuals—among them real estate agents, mortgage brokers, escrow officers, title company

attorneys, property appraisers, and straw buyers—conspired to defraud numerous lending institutions of over $20 million by convincing them to approve mortgage loans for residential properties for which the appraised values had been fraudulently inflated. The scheme was orchestrated by John Barry, who controlled or directed the actions of each of the conspirators through a series of shell companies he owned. At Barry's direction, Mitchell, a certified and licensed real estate appraiser, allegedly inflated the appraised value of at least thirty-five properties, directly causing over $8 million in losses to lending institutions.

The fraud was perpetrated in one of two ways. The first method involved a single transaction in which straw purchasers recruited by Barry agreed to buy homes for significantly greater sums than the homes were worth, and for significantly higher prices than legitimate homeowners were seeking. Appraisers falsely inflated the appraised value of the targeted properties to convince lending institutions to finance the sales. With the assistance of real estate agents, mortgage brokers, and title company employees, straw purchasers obtained inflated mortgage loans based on false representations in loan applications regarding their income, assets, and intent to occupy the properties. The difference between a legitimate seller's asking price and the inflated loan amount—which largely was based on the false appraisal—provided the fraudulently-obtained proceeds to the conspirators.

In the second method, conspirators again purchased homes from legitimate sellers, but then "flipped" them by selling the properties in a second, often simultaneous, transaction to straw buyers who paid substantially inflated prices. As in the first scheme, lending institutions funded the purchases based on the fraudulent appraisals of the homes' values and the false representations provided by the straw buyers in loan applications. Because the original transactions often closed simultaneously with the second, "flipped" transactions, the latter purchases usually financed the former purchases. The difference between the original sale price and the second sale price provided the conspirators' fraudulent proceeds.

At trial, the government presented extensive evidence to advance its theory that Mitchell played a critical role in the conspiracy by artificially inflating the property valuations in his appraisals. The government also argued that Mitchell was instrumental in concealing the fraud, insofar as he used the mails or forms of wire communication to submit false or materially misleading documents to lending institutions. In return for his appraisals, Mitchell received approximately $52,000, either directly from Barry or from one of Barry's companies. Mitchell did not disclose these proceeds to the lending institutions, though he routinely certified to them that he had "no present or prospective personal interest or bias with respect to the participants in the transaction," and that his "compensation for performing ... [the] appraisals was not conditioned on any agreement or understanding, written or otherwise, that [he] would report or present analysis supporting a predetermined specific value."

At the conclusion of trial, a jury found Mitchell guilty of two counts of mail fraud and one count of conspiracy to commit mail and wire fraud. On March 27, 2012, the district court sentenced him to 120 months' imprisonment for each count, with the sentences to run concurrently. Mitchell also was ordered to pay restitution in the amount of $8,245,423.

*Mitchell*, 533 F. App'x at 388-89.

## Grounds for Relief

Mitchell presented the following grounds for relief in his memorandum:

1.  Inadmissible hearsay evidence admitted at trial (ineffective assistance of counsel, failure to know the law).

2.  IPSE DIXIT USPAP analysis was legally insufficient to establish or insinuate fraud. Jack McComb violated FRE 702 and 703 with his qualitative analysis and his tax appraisal testimony at trial (ineffective assistance of counsel for defense and appellate counsel).

3.  Agent Velasquez's testimony was tantamount to a trial by charts in violation of FRE 1006 and FRE 701 (ineffective assistance of counsel - failure to research law and provide competent representation).

4.  Important exculpatory evidence containing the identity and appraisal methods of unknown individuals (Confrontation Clause information) was intentionally and strategically not provided to the defense in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). A timely and comprehensive discovery request exhorting the prosecutor to show "transparency" and "disclosure" as advised under *Cone v. Bell*, 556 U.S. 449 (2009) advising "the prudent prosecutor will err on the side of transparency," was faxed and mailed to Mr. Shamoil Shipchandler on 18 January 2011.

5.  The court-appointed trial attorney, Durden, and the court-appointed appellate attorney, Huggler, provided constitutionally-ineffective assistance of counsel as described in *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Juarez*, 672 F.3d 381, 390 (5th Cir. 2012).

6.  The Government did not prove its case against Mitchell during the trial to support the jury's guilty verdict. To prove mortgage or appraisal fraud under 18 U.S.C. § 371, the Government must show and prove Mitchell engaged in a scheme to defraud by (1) "inflating" the subject property appraisals, (2) that the subject property appraisals involved federally-related mortgages under FIRREA, and (3) that he acted knowingly.

## Standard of Review

A § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). The movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on

the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir. 1992). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The role of § 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). "Section 2255 does not reach errors of constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Id.* Similarly, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013).

### Discussion and Analysis

**Claim Number 1: Inadmissible hearsay evidence admitted at trial (ineffective assistance of counsel, failure to know the law).**

Mitchell initially alleges that the trial court erred in admitting evidence and testimony that was clearly inadmissible hearsay. More specifically, the trial court purportedly erred in admitting tax assessment values of the Central Appraisal District. The evidence of the tax assessment values was presented to the jury in a summary chart as Government Trial Exhibit 127. Agent Richard Velasquez provided testimony summarizing the evidence. Velasquez testified that the tax value was a "kind of starting point of what value should be." ECF 1395, 223[1]. Mitchell counters the testimony by stressing

---

[1] Throughout this Report and Recommendation, ECF refers to docket entries in *United States v. Mitchell*, Criminal Number 4:10CR00057-026, followed by the page number.

that the Fifth Circuit has noted that "under Texas law, tax valuations are legally insufficient evidence of fair market value." *United States v. Curtis*, 635 F.3d 704, 718 n.50 (5th Cir. 2011).

The Government correctly observed, in response, that this issue was fully discussed on appeal. The Fifth Circuit rejected Mitchell's claim on appeal as follows:

> Mitchell ignores, however, that the government introduced tax values merely to provide a baseline estimate of the value of a particular piece of property. The government never represented, in other words, that tax assessments were anything more than a data point to orient the jury. Indeed, Agent Velasquez himself testified that tax value is a "baseline" and a "kind of starting point of what value should be." Further, when asked if tax value was simply a "data point," he responded, "[t]hat's all it is." The government thus did not improperly rely on tax assessments - much less base its entire case on them.

*Mitchell*, 533 F. App'x at 392-93. The Fifth Circuit fully considered Mitchell's complaint on appeal and rejected it. "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *Kalish*, 780 F.2d at 508. Mitchell may not relitigate an issue already decided on direct appeal. Mitchell's first ground for relief is not cognizable on collateral review.

Mitchell also presents the ground for relief in the context of an ineffective assistance of counsel claim. He asserted that his trial attorney should have objected to the testimony. He further asserted that his trial attorney failed to familiarize himself with important state and federal decisions regarding tax assessment values.

Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance.

*Id.* at 688.  The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment.  *Id.* at 690.  Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice.  *Id.* at 687.  To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either.  *Id.* at 697.

In the present case, the Fifth Circuit found that the way the county tax appraisals were used at trial was not improper.  They were simply a baseline estimate of the value of a piece of property.  *Mitchell*, F. App'x at 393.  There was no basis for an objection.  Counsel was not required to make frivolous or futile motions or objections.  *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Furthermore, Mitchell provided no evidence to support his claim that his trial attorney failed to familiarize himself with important state and federal decisions regarding tax assessment values.  He offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a collateral challenge to his conviction.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Koch*, 907 F.2d at 530; *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  Also, Mitchell's claim is not supported by the record.  The Government attached an affidavit from Mitchell's trial attorney to the response to the § 2255 motion.  Counsel noted that he filed an objection to the admission of testimony relating to property values, and the Court denied the motion.  Counsel's representation cannot be deemed deficient because the trial court denied his motion.  Finally, in light of the Fifth Circuit's conclusion that the use of this evidence was proper, Mitchell

cannot show prejudice. Mitchell has not shown that his trial attorney's representation on this matter was deficient or that he was prejudiced by such deficient representation. The ineffective assistance of counsel claim lacks merit. Overall, Mitchell is not entitled to relief on his first claim.

> **Claim Number 2:** **IPSE DIXIT USPAP analysis was legally insufficient to establish or insinuate fraud. Jack McComb violated FRE 702 and 703 with his qualitative analysis and his tax appraisal testimony at trial (ineffective assistance of counsel for defense and appellate counsel).**

In his second ground for relief, Mitchell claims that the evidence was insufficient to show that he violated the requirements of the Uniform Standards of Professional Appraisal Practice (USPAP) when he made appraisals. He argues that Jack McComb's testimony was not sufficient to show that the appraisals were inflated.

The Government properly observed in response that the Fifth Circuit found on appeal that the evidence was sufficient. *Mitchell*, 533 F. App'x at 393. "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *Kalish*, 780 F.2d at 508. *See also Withrow v. Williams*, 507 U.S. 680, 720-21 (1993). Furthermore, in rejecting the insufficient evidence claim on appeal, the Fifth Circuit referred to McComb's testimony that, in his opinion, Mitchell's appraisals did not comply with the USPAP standards, as an example of evidence that could lead a rational trier of fact to conclude that Mitchell's appraisals were "so far beyond any commonly accepted idea of market value that they were further indicia of his intent to commit fraud." *Mitchell*, 533 F. App'x at 392 and n.1. This issue was decided on direct appeal and may not be considered anew in a § 2255 proceeding.

As with the first ground for relief, Mitchell once again claimed that his trial attorney was ineffective on this issue. He likewise claimed that his appellate attorney was ineffective. The two-prong *Strickland* test applies to claims of ineffective assistance of counsel by both trial and appellate counsel. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). On appeal, effective assistance of

counsel does not mean counsel who will raise every nonfrivolous ground of appeal available. *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1999). Rather, it means that counsel must have performed in a reasonably effective manner. *Id.* To demonstrate prejudice, the Petitioner must "show a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001) (citations omitted).

In ground for relief number two, Mitchell went no further than to allege in the heading of his claim that his trial and appellate attorneys were ineffective. He did not develop the issue at all. It is noted that he raised the issue again in conjunction with ground for relief number five, but he did not develop the issue in conjunction with ground for relief number two. He failed to show that either his trial attorney or his appellate attorney provided deficient representation. He likewise failed to show that he was prejudiced by their deficient representation. He offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a collateral challenge to his conviction. *Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011. The ineffective assistance of counsel claim lacks merit. Overall, Mitchell is not entitled to relief on his second claim.

**Claim Number 3:** **Agent Velasquez's testimony was tantamount to a trial by charts in violation of FRE 1006 and FRE 701 (ineffective assistance of counsel - failure to research law and provide competent representation).**

In his third ground for relief, Mitchell once again complains about Government Exhibit 127. He claims that the Court erred by admitting the testimony of Agent Velasquez regarding Government's Exhibit 127. He specifically alleges that Valesquez was "masquerading" as a lay witness giving expert testimony in violation of Rule 701 of the Federal Rules of Evidence.

Mitchell did not object to Agent Velasquez's testimony. Indeed, one of his complaints is that his trial attorney stipulated to the chart provided by Velasquez and the supporting testimony, which he characterized as hearsay. The Government correctly observed that the claim is barred from

collateral review. Issues that could have been raised on direct review, but were not, are not cognizable on collateral review unless the movant shows cause and prejudice for his procedural default. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Pierce*, 959 F.2d 1297, 1300-02 (5th Cir. 1992). In *Pierce*, the Fifth Circuit rejected a § 2255 movant's challenge to an agent's testimony because the claim could have been raised on direct appeal, but was not, and the movant failed to "clear the procedural hurdle for a collateral challenge." *Id.* at 1304-05. In the present case, Velasquez testified at length during the trial. Mitchell could have objected at trial and could have raised the issue on appeal, but he failed to do so. He has not shown cause and prejudice for the default; thus, Mitchell is barred from bringing it on collateral review.

As with the previous two claims, Mitchell claims that his trial attorney was ineffective on this matter. He asserted that his trial attorney failed to research the law and provide competent representation. He further claimed that his trial attorney was clearly unaware of the inadmissible hearsay and the state and federal cases cited by him in his first ground for relief.

As was explained in conjunction with Mitchell's first ground for relief, the evidence regarding the tax appraisals was admissible for the purposes for which it was offered. *Mitchell*, 533 F. App'x at 392-93. The following observation by the Fifth Circuit regarding this evidence is equally appropriate with respect to the present proceeding: "Mitchell ignores, however, that the government introduced tax values merely to provide a baseline estimate of a particular piece of property. . . . The government thus did not improperly rely on tax assessments - much less base its entire case on them." *Id.* at 393. The evidence was admissible. Counsel was not required to make frivolous or futile motions or objections. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527. Furthermore, Mitchell provided no evidence to support his claim that his trial attorney failed to familiarize himself with important state and federal decisions regarding tax assessment values. Once again, he offered nothing

other than conclusory allegations and bald assertions, which are insufficient to support a collateral challenge to his conviction. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011. Also, Mitchell's claim is not supported by the record. Trial counsel noted in his affidavit that he filed an objection to the admission of testimony relating to property values, and the Court denied the motion. Counsel's representation cannot be deemed deficient because the trial court denied his motion. Moreover, in light of the Fifth Circuit's conclusion that the use of this evidence was proper, Mitchell cannot show prejudice. Mitchell has not shown that his trial attorney's representation on this matter was deficient or that he was prejudiced by such deficient representation.

It is further noted that the Government's response to the § 2255 motion included affidavits from Mitchell's trial and appellate attorneys. His appellate attorney provided the following astute observation about Mitchell's ineffective assistance of counsel claim:

> This ground overlaps the analysis in the first two grounds and is an almost identical argument. Mr. Mitchell apparently believes that because this evidence was used against him, and he believes that it was improper, that his conviction should have been reversed. Mr. Mitchell does not understand that in order for an evidentiary issue to be successful on appeal, first the error must be preserved. Without an objection ruled on by a trial court, an appellate court is almost never willing to reverse on a simple evidentiary issue. Mr. Mitchell's analysis assumes that the evidentiary error, by itself, is of sufficient harm to require reversal.

> Mr. Mitchell also assumes that the only source of evidence regarding the values in this case came from Government Exhibit 127. The evidence from 127 was supported by other witnesses, including a straw purchaser, previous owners of the homes, and other witnesses. Even if an objection had been made, and error preserved, because evidence also came in from other witnesses regarding valuation, Mr. Mitchell's point of error related to exhibit 127 would most likely be found to be harmless error. Counsel denies that this ground raised by Mr. Mitchell was ineffective assistance of counsel.

*See* Government's Response, Exhibit B, pages 5-6. Counsel's observations succinctly and correctly provided an explanation as to why Mitchell cannot satisfy *Strickland*'s prejudice prong. The ineffective assistance of counsel claim lacks merit. Overall, Mitchell is not entitled to relief on his third ground for relief.

**Claim Number 4:** **Important exculpatory evidence containing the identity and appraisal methods of unknown individuals (Confrontation Clause information) was intentionally and strategically not provided to the defense in violation of _Brady v. Maryland_, 373 U.S. 83, 87 (1963) and _Crawford v. Washington_, 541 U.S. 36, 53-54 (2004). A timely and comprehensive discovery request exhorting the prosecutor to show "transparency" and "disclosure" as advised under _Cone v. Bell_, 556 U.S. 449 (2009) advising "the prudent prosecutor will err on the side of transparency," was faxed and mailed to Mr. Shamoil Shipchandler on 18 January 2011.**

In his fourth ground for relief, Mitchell complains that the Government did not provide information regarding who made the individual tax appraisals list in Government Exhibit 127, in violation of _Brady._ He asserted that Agent Velasquez served as a surrogate or replacement witness for these individuals. He claimed that it was "not enough for Velasquez to assert that values are **'inflated,'** because he is not a licensed appraiser and cannot assert to value on **Government Trial Exhibit 127** because he cannot explain how the values were derived or what specific appraisal techniques were used to come to the values."

The Government persuasively argued that the issues being raised by Mitchell in claim number four were procedurally defaulted. The issues could have been raised on direct appeal but were not; thus, they are not cognizable on collateral review unless Mitchell shows cause and prejudice for the default. _Lopez_, 248 F.3d at 433. Mitchell has not shown cause and prejudice for the default. Consequently, claim number four must be rejected as procedurally defaulted.

Claim number four may also be denied because it lacks merit. Under _Brady_, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. _Brady_ concerned a defendant's right to a fair trial. _Oman v. Cain_, 228 F.3d 616, 620 (5th Cir. 2000). In order to prevail on a _Brady_ claim, the Fifth Circuit has required a petitioner to show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to his guilt or innocence. _Mahler v. Kaylo_, 537 F.3d 494, 499 (5th Cir.

2008) (citations omitted).  Evidence is material only when there exists a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 500.  "Evidence is not 'suppressed' if the defendant either knew, or should have known of the essential facts permitting him to take advantage of any exculpatory evidence." *Rector v. Johnson*, 120 F.3d 551, 560 (5th Cir. 1997).  A defendant's rights under *Brady* were not violated where information was fully available to the defendant and his reason for not obtaining and presenting such information was his own lack of due diligence.  *United States v. Infante*, 404 F.3d 376, 386-87 (5th Cir. 2005).

Here, the Fifth Circuit held that the Government's use of the tax appraisals was not improper because they were just used to provide a baseline of the value for the targeted properties.  *Mitchell*, 533 F. App'x at 392-93.  The Government "did not improperly rely on tax assessments - much less base its entire case on them."  *Id.* at 393.  Consequently, the tax appraisals were not material to the outcome of Mitchell's guilt or innocence.  Moreover, the county tax appraisals were public record.  Velasquez testified that the tax values were used because they were readily available on the internet.  ECF 1395, 223.  They were just as available to Mitchell as they were to the Government.  As such, the information shown on Exhibit 127 was not *Brady* material.  Claim number four lacks merit.

Claim number five, which is Mitchell's global ineffective assistance of counsel claim, will be reserved for last.

**Claim Number 6:      The Government did not prove its case against Mitchell during the trial to support the jury's guilty verdict.  To prove mortgage or appraisal fraud under 18 U.S.C. § 371, the Government must show and prove Mitchell engaged in a scheme to defraud by (1) "inflating" the subject property appraisals, (2) that the subject property appraisals involved federally-related mortgages under FIRREA, and (3) that he acted knowingly.**

In claim number six, Mitchell alleges that the evidence was insufficient to support the jury's verdict. This claim, however, was fully discussed on direct appeal.  The Fifth Circuit found that "a reasonable trier of fact easily could have found that the government established Mitchell's guilt beyond

a reasonable doubt." *Mitchell*, 533 F. App'x at 393. "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *Kalish*, 780 F.2d at 508. Mitchell may not relitigate the insufficient evidence claim. Mitchell's sixth ground for relief is not cognizable on collateral review.

**Claim Number 5:** **The court-appointed trial attorney, Durden, and the court-appointed appellate attorney, Huggler, provided constitutionally-ineffective assistance of counsel as described in *Strickland v. Washington*, 466 U.S. 668 (1984), and *United States v. Juarez*, 672 F.3d 381, 390 (5th Cir. 2012).**

In claim number five, Mitchell lists eighteen ways in which his attorneys were allegedly ineffective. As was explained previously on pages five and six of this Report and Recommendation, Mitchell bears the burden on showing (1) that his attorneys' performance was deficient and (2) that he was prejudiced by such deficient representation. *Strickland*, 466 U.S. at 687. *See also United States v. Kayode*, 777 F.3d 719, 723 (5th Cir. 2014); *United States v. Bernard*, 762 F.3d 467, 471 (5th Cir. 2014). At the outset, the Court notes that Mitchell generally did not develop his claims. In many instances, he merely made a statement about a perceived flaw in his attorneys' representation without discussing it in the context of *Strickland*. By failing to adequately brief these issues, Mitchell waived them. *See, e.g., Summers v. Dretke*, 431 F.3d 861, 870 (5th Cir. 2005). The Court will, nonetheless, fully discuss each ineffective assistance of counsel claim.

1.      Mitchell initially argues that his trial attorney was ineffective for failing to object to the admission of evidence in Government Exhibit 127. As was previously noted in conjunction with Mitchell's claim number 1, the Fifth Circuit found that the way that the county tax appraisals were used at trial was not improper. The county tax appraisals were presented as a baseline estimate of the value of a piece of property. *Mitchell*, F. App'x at 393. Objections to the evidence would have been overruled. Counsel was not required to make frivolous or futile motions or objections. *Johnson*, 306

F.3d at 255; *Koch*, 907 F.2d at 527. Furthermore, Mitchell cannot show prejudice in light of the Fifth Circuit's opinion. Mitchell's first ineffective assistance of counsel claim lacks merit.

2.    Mitchell next alleges that his trial attorney was ineffective for stipulating to the Government's trial exhibits, including Exhibit 127. He argued that this was a major unprofessional error as outlined in *Strickland*. The Government persuasively argued that the claim is conclusory. Indeed, Mitchell did not cite any authority where a court held that stipulating to evidence is *per se* unprofessional error or deficient representation. Mitchell likewise failed to show that his attorney's performance was deficient by stipulating to this particular piece of evidence. Moreover, he cannot show harm in light of the opinion by the Fifth Circuit. Mitchell's second ineffective assistance of counsel claim lacks merit.

3.    Mitchell next claims that his trial attorney was ineffective for failing to obtain *Brady* evidence containing Confrontation Clause evidence despite being asked to do so in e-mails. In support of the argument, he cites claim number four. However, as was discussed in conjunction with claim number four, there was no *Brady* violation in this case. Counsel was not required to make frivolous or futile motions. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527. Furthermore, Mitchell cannot show harm. The third ineffective assistance of counsel claim lacks merit.

4.    Mitchell next complains that his trial attorney failed to interview potential witnesses crucial to his case, including but not limited to John Barry, Joy Beckner, Elaine Powers, Julie Hanley, Patty Peery, Frank Field, Jocelyn Sapp and Byron Harris. He stresses that they all knew facts about this case, and none of them testified at his trial. The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To succeed on the claim,

a petitioner must show that had counsel investigated the claim he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on his behalf. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir.), *cert. den.,* 469 U.S. 1041 (1984). Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness severely undermines a claim of ineffective assistance. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Conclusory claims are insufficient to entitle a petitioner to relief in a collateral challenge to his conviction. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). *See also King v. Cockrell*, 33 Fed. Appx. 703 (5th Cir. 2002). In the present case, Mitchell failed to discuss the proposed witnesses' anticipated testimony. He failed to show that their testimony would have been favorable and that they were willing to testify. His claim of uncalled witnesses is conclusory. The fourth ineffective assistance of counsel claim lacks merit.

5. In the fifth ineffective assistance of counsel claim, Mitchell alleges that his trial attorney failed to research the law. He cites three Fifth Circuit opinions that he believes are relevant to his case. *Whitehouse Hotel L.P. v. C.I.R.*, 615 F.3d 321 (5th Cir. 2010); *United States v. Curtis*, 635 F.3d 704 (5th Cir. 2011); *Petula Associates, Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499 (5th Cir. 2001). However, he provided no evidence to support the claim that his attorney failed to research the law. He simply assumed that his attorney did not research the law because he did not focus on these cases. The claim is conclusory and pure speculation. Moreover, he failed to establish that he was prejudiced by his attorney's failure to present these cases at trial; instead, he made the conclusory claim that the cases were relevant. The fifth ineffective assistance of counsel claim lacks merit.

6.      Mitchell next argues that his trial attorney was ineffective for failing to research and uncover the fact that Jack McComb, an expert witness for the Government, had been previously impeached on the stand in *Morka v. United States*, No. 3:10-CV-0499-M-BK, 2010 WL 5575195 (N.D. Tex. Aug. 27, 2010). As before, Mitchell did not submit any evidence showing that his attorney failed to research and uncover the fact the McComb was impeached in another case. The claim is conclusory.

Furthermore, McComb's concession in *Morka* was not significant. In *Morka*, during the defense's case-in-chief, the defendant testified on cross-examination that he sent a letter to the Texas Appraiser Licensing and Certification Board complaining that his name had been used in connection with a fraudulent scheme. *Id.* at *8. McComb was called as a rebuttal witness and testified in his capacity as an investigator for the Board. *Id.* According to McComb, the Board had not received the alleged correspondence. *Id.* Defense counsel impeached McComb by showing him a copy of the letter. *Id.* "McComb admitted that it was possible that the letter had been received by the Board, but had not been given to him." *Id.*

In order to obtain relief on this point, Mitchell must make a concrete showing of what testimony the further cross-examination would have elicited and how it would have affected the outcome of the trial. *Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009). Mitchell does not point to any evidence that would have been impacted in this case by eliciting the fact that McComb was possibly mistaken about whether the Board had received a particular letter in another case. Moreover, even if this information had been introduced at trial, Mitchell has not shown that it would have discredited McComb's testimony in this case. The Government appropriately observed that McComb's testimony regarding Mitchell's compliance with the USPAP standards was only a small part of its case. Assuming *arguendo* that trial counsel should have impeached McComb in this case

16

by noting that he made a concession in *Morka*, Mitchell has not shown that he was prejudiced by counsel's failure to raise the issue. Once again, he has not satisfied his burden of satisfying both *Strickland* prongs. The sixth ineffective assistance of counsel claim lacks merit.

7. Mitchell next alleges that his trial attorney was ineffective for failing to discern the fact that five out of the six homeowners who testified for the Government at trial lost money on the sale of their property to John Barry during the first reputed closing, fair market value, arms-length transaction. According to Mitchell, all of the homeowners sold their properties at tax appraisal values slightly higher or slightly lower than tax assessment value. All of the homeowners relied on their realtor who cooperated with John Barry's representatives. He again stressed that tax values do not represent fair market value. Nonetheless, this information was uncovered by simple financial analysis with an Excel worksheet. He asserts that his trial attorney, a former CPA, could have discovered this pattern and the losses, but he failed to do so. Mitchell did not, however, support his claim with any evidence. His claim is conclusory.

The claim lacks merit for the additional reason that Mitchell has not shown that he was prejudiced by counsel's alleged failure to uncover this information. Many of the home owners testified about the sale of their homes in the first transaction. Exhibit 127 contained a summary of the property records of the targeted properties, including the contract price and the date for the first transaction, the first sale price, and the first appraisal with the date of the appraisal and the name of the appraiser. Consequently, the jury was informed of the sale prices in the first transaction. The information that trial counsel purportedly failed to discover was before the jury. Mitchell cannot show that he suffered any prejudice from his trial attorney's alleged error. The seventh ineffective assistance of counsel claim lacks merit.

8.    Mitchell next alleges that his attorney sent him a disturbing e-mail concerning prosecutorial misconduct and failed to notify the Court or advise him about the resolution of the issue. He added that the subject was dropped and never discussed again.  He attached the email as exhibit 43.  In the email, trial counsel advised Mitchell that he was "researching a motion for prosecutorial misconduct.  The FBI agent called our expert witness without notifying me."  Other than pointing out the statement made by counsel, Mitchell failed to develop the issue.  He has not shown that his attorney's performance was deficient on this issue.  He likewise failed to show that he was prejudiced by such deficient representation.  The claim is conclusory and should be rejected.

The claim should also be rejected on the merits.  The Government's response included an affidavit from counsel.  Counsel made the following statement in his affidavit:

> Additionally, I received authorization to hire an independent expert, B. J. "Bill" Fenoglio.  Mr. Fenoglio is a Certified Review Appraiser.  The defense had initially hoped to call Mr. Fenoglio as an expert witness to demonstrate that the appraisals have been properly conducted, and that the values were supportable.  After reviewing the subject appraisals, Mr. Fenoglio could not testify that such was his professional opinion.

Government's Response, Exhibit A, page 2. Irrespective of whether an agent contacted Fenoglio, counsel did not call him because he could not give testimony that was beneficial to Mitchell.  Mitchell has not shown that he was prejudiced in any way because an agent may have contacted the expert.  He has not shown that trial counsel's performance was deficient with regard to this matter or that he was prejudiced by such deficient performance.  The eighth ineffective assistance of counsel claim lacks merit.

9.    Mitchell next alleges that his trial attorney was ineffective for failing to object to a false statement about his CPA license designed to influence the jury.  He asserts that the statement was made by the Government prior to closing arguments, and he complains that the statement was not challenged by trial counsel.  He cites exhibits 28 and 58.

Exhibit 58 is a copy of a letter, dated August 13, 2004, from the Texas State Board of Public Accountancy to Mitchell. The letter reveals that the Board had received and accepted the voluntary surrender of his CPA license. Exhibit 28 is a page from the trial transcript regarding the testimony of Terry Lynn Webb. Webb was a longtime friend and called as a character witness. He testified that Mitchell had prepared his taxes for many years. ECF 1395, 261. When Webb testified that he did not believe that Mitchell would commit fraud and that he was honest, the Government advised the Court that it wanted to question Webb about whether he knew that the Mitchell had given up his CPA license because it was found that he failed to comply with generally accepted accounting principles. *Id.* at 263. Trial counsel objected. *Id.* at 263-64. The Court found that Mitchell had opened up the issue of his character. *Id.* at 264. The Court overruled the objection, and the Government asked Webb if he knew that Mitchell had been investigated by the Board of Public Accountancy and that he had turned in his license. *Id.* at 266. Webb answer "no" to both questions. *Id.*

The record does not support Mitchell's claim that counsel failed to object to this line of questioning. The record actually shows that he vigorously objected to the Government's line of questioning on cross-examination. Mitchell thus has not shown deficient representation, as required by *Strickland*. He also failed to show prejudice. The ninth ineffective assistance of counsel claim lacks merit.

10.     Mitchell next alleges that his trial attorney failed to introduce a voluminous amount of rebuttal evidence at trial from third party reputable sources. He cites exhibits 48, 49, 51, 53, 54 and 55. He described the evidence as power points. He complained that trial counsel declined to introduce the evidence.

The claim is conclusory. Mitchell failed to show that his trial attorney's performance was deficient for failing to introduce this evidence. He likewise failed to show harm. The Government

appropriately noted that the exhibits relate to information regarding the population growth in McKinney, Texas, and a corresponding growth in home prices. Mitchell failed to show how this information would have affected his trial. Also, the issue at trial was conspiracy to commit fraud, along with fraud. The Fifth Circuit found that the evidence was sufficient to support the conviction. *Mitchell*, 533 F. App'x at 392. Mitchell has not shown that the omitted evidence would have undermined the Fifth Circuit's conclusion. Once again, Mitchell has not satisfied his burden under *Strickland*. The tenth ineffective assistance of counsel claim lacks merit.

11. Mitchell next claims that his attorney was ineffective for trying to convince him to accept a plea bargain offered by the Government. He noted that his trial attorney told him, "You can start drawing your social security to live on after you get out of prison. That's not so bad, is it?" Mitchell went on to repeat his previous claims presumably for the proposition that it shows that he should not have pled guilty. He added that his appellate attorney was ineffective for failing to raise these issues on appeal.

One specific argument was discussed in detail by Mitchell. He asserts that trial counsel should have requested an evidentiary hearing and asked the Court to "rule on the **IPSE DIXIT** testimony form ***Daubert***, and the tax value prior to trial." Br. at 16 (emphasis in original). The record reveals that the Court, in fact, conducted an evidentiary hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), regarding McComb's testimony, and trial counsel cross-examined him regarding his credentials and methodology. ECF 1338, 27-70. The parties proceeded to argue whether McComb's testimony should be admitted in light of *Daubert*. *Id.* at 73-88. The record reveals that Mitchell's claim on this issue lacks any basis in fact.

Furthermore, the Government persuasively argued that the facts as alleged by Mitchell in this claim do not show that there is a reasonable probability that, but for his trial and/or appellate attorney's

unprofessional performance, the result of the proceedings would have been different. *Strickland*, 466

U.S. at 694. The reality of the matter is that counsel had the duty to communicate formal offers from

the prosecution. *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). Counsel complied with his duty.

Regardless of what Mitchell may have thought about the offers, his attorney complied with his duty

as his attorney. Mitchell had the prerogative to reject the offers and counsel's advice regarding the

offers, and he did so. He had his trial and was found guilty. With respect to the broad claim that all

of the issues raised by him should have been raised on appeal, the Court notes that each issue has been

previously explored and found to be without merit. Mitchell has not shown prejudice with respect to

any of the complaints lodged against his trial and appellate attorneys. The eleventh ineffective

assistance of counsel claim lacks merit.

12. The remainder of Mitchell's ineffective assistance of counsel claims concern his

appellate attorney. He noted that he sent a letter to his appellate attorney with specific instances of

ineffective assistance of trial counsel. His appellate wrote back with the following response: "I did not

find any act supported by the record which would implicate *Strickland*." (Exhibit 44). In the present

ineffective assistance of appellate counsel claim, Mitchell counters the response by complaining once

again that trial counsel stipulated to all of the Government's exhibits (Exhibit 36). As before, he

complained about Government Trial Exhibit 127.

In his affidavit, Mitchell's appellate attorney provided the following response:

I was provided many documents by Mr. Mitchell over the course of my representation.
Contrary to Mr. Mitchell's assertion, I did examine the stipulation in petition exhibit 36,
USCA5 662. Mr. Durden agreed to the admissibility of the exhibits provided by the
Government. On direct appeal, this type of issue, a <u>Strickland</u> issue implicating trial strategy,
will not be reviewed favorably by an appellate court.

Government's Response, Exhibit B, page 6.

It is noted once again that the two-prong *Strickland* test applies to claims of ineffective assistance of counsel by both trial and appellate counsel. *Styron*, 262 F.3d at 450. On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available. *Green*, 160 F.3d at 1043. Rather, it means that counsel must have performed in a reasonably effective manner. *Id.* To demonstrate prejudice, Mitchell must "show a reasonable probability that, but for his counsel's unreasonable failure . . ., he would have prevailed on his appeal." *Briseno*, 274 F.3d at 207.

Mitchell's appellate attorney focused on trial strategy in declining to raise the issue. The Supreme Court explained in *Strickland* that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *See Strickland,* 466 U.S. at 690-91. Federal courts "will not question a counsel's reasonable strategic decisions." *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007). In applying *Strickland*, the Fifth Circuit held that "the failure to present a particular argument or evidence is presumed to have been the result of strategic choice." *Taylor v. Maggio*, 727 F.2d 341, 347-48 (5th Cir. 1984). Collateral relief is unavailable if a petitioner fails to overcome the presumption that counsel made sound strategic decisions. *Del Toro v. Quarterman*, 498 F.3d 486, 491 (5th Cir. 2007).

The Fifth Circuit dealt with the issue of an attorney stipulating to evidence in *Mattio v. Cain*, 267 F. App'x 389, 391 (5th Cir. 2008). It was noted that the petitioner failed to articulate an alternative strategy that should have been employed; thus, he failed to overcome the "strong presumption" that counsel's decision to stipulate to the evidence was "sound trial strategy." *Id.* (citing *Strickland*, 466 U.S. at 689). The Fifth Circuit further found that relief should be denied because the

petitioner had not shown prejudice. *Id.* The Fifth Circuit's conclusions are equally applicable in the present case. Mitchell has not overcome the strong presumption that trial counsel's decision to stipulate to the evidence was sound trial strategy. He likewise failed to show prejudice. It is again noted that Mitchell is bringing this claim in the context of an ineffective assistance of appellate counsel claim. He has not shown, however, that his appellate attorney's performance was deficient for failing to raise this issue on appeal. Indeed, his appellate attorney correctly observed that trial strategy claims will not be reviewed favorably by an appellate court. Mitchell likewise failed to show a reasonable probability that, but for appellate counsel's unreasonable failure to raise the issue, he would have prevailed on his appeal. The twelfth ineffective assistance of counsel claim lacks merit.

13. Mitchell's next ineffective assistance of counsel claim is another complaint that evolved out of a portion of his appellate attorney's letter. This time, he focused on the following statement made by his attorney:

> The reason that Velasquez did not testify at the *Daubert* hearing is that he was not offered as an expert witness. I reviewed his testimony very carefully. While it is true that he summarized the houses comparing your appraisal value with the tax rolls, and this is not recognized, there was not an objection to this line of questioning.

Exhibit 44. Mitchell argued that his appellate attorney's comments recognized that his trial attorney blundered; nonetheless, he failed to raise this issue on direct appeal.

In his affidavit, Mitchell's appellate attorney provided the following response:

> Failure to object to a line of questioning by trial counsel, in most cases, eliminates that possible error from consideration by the appellate courts. I would again point out that the testimony regarding tax values was discussed in the brief of appellant and that does not implicate Strickland.

Government's Response, Exhibit B, page 6.

The present claim is yet another rehash of Mitchell's first ground for relief but presented in the context of an ineffective assistance of appellate counsel claim. Mitchell's appellate attorney correctly

analyzed the situation. Counsel challenged the use of the tax values, and the Fifth Circuit fully addressed the issue and rejected Mitchell's claims. *Mitchell*, 533 F. App'x at 393. Mitchell has not shown that his appellate attorney's performance was deficient on this issue. He likewise failed to show prejudice. The thirteenth ineffective assistance of counsel claim lacks merit.

14.     In his next ineffective assistance of counsel claim, Mitchell states that he provided copies of *Curtis* and *Black* to his appellate attorney and asked him to originate a 28J addendum to his appeal, and he failed to do so.

Mitchell's appellate attorney provided the following response to this claim:

> Mr. Mitchell fails to comprehend that the Government proved the case against him regarding valuation on more than the tax appraisal records. While his case is similar to United States v. Curtis, 635 F.3d 704 (5th Cir. 2011), cert. denied., the Government's testimony included at least one straw purchaser, as well as owners of the properties who testified regarding value. That evidence, as in Curtis, would be sufficient evidence that the true fair market values of the properties were substantially lower that Mr. Mitchell's appraisals. A similar analysis can be made regarding Dallas County Bail Bond Board v. Black, 833 S.W.2d 247 (Tex. App. - Dallas 1992, no writ). The Dallas Court of Appeals stated that the value placed upon real property for tax assessment purposes, without participation of the landowner, is not evidence of its value for purposes other than taxation. While I did not cite the Black opinion in my brief, the same point was made in the first point of error raised regarding the sufficiency of the evidence. I did not agree with Mr. Mitchell that supplementation of these two cases was proper.

Government's Response, Exhibit B, page 6-7.

An appellate attorney "is not ineffective merely because he fails to raise an issue or issues requested by appellant." *Hamilton v. McCotter*, 772 F.2d 171, 182 (5th Cir. 1985). Counsel explained that he did not believe that supplementation of these two cases was proper. Nonetheless, he noted that he raised the substance of *Black* in his brief, although he did not cite the case by name. Mitchell has not shown that his appellate attorney's performance was deficient on this issue because he did not specifically cite *Curtis* and *Black*. Mitchell cannot show harm since the sufficiency of the evidence was raised on appeal and rejected. *Mitchell*, 533 F. App'x at 389-93. The Fifth Circuit held that the Government's use of the tax values was not improper. *Id.* at 393. Mitchell failed to show a reasonable

probability that, but for appellate counsel's unreasonable failure to specifically cite *Curtis* and *Black*, he would have prevailed on his appeal. The fourteenth ineffective assistance of counsel claim lacks merit.

15. Mitchell revisits the prosecutorial misconduct claim in his fifteenth ineffective assistance claim. He previously presented the claim in the context of ineffective assistance of trial counsel in claim eight. In the present claim, he adds that appellate counsel "had a fiduciary duty as an officer to bring the matter to the court's attention and let the court determine the resolution." Br. at 17.

> Mitchell's appellate counsel responded to the claim as follows:

> Mr. Mitchell asserts that I was provided a copy of an electronic mail which established prosecutorial misconduct, that I declined to use it, and that I had a fiduciary duty to bring this to the court's attention. I did receive the electronic mail from Mr. Mitchell contained in petition exhibit 43 and sent him the letter in petition exhibit 44. That being said, the electronic mail from Mr. Durden to Mr. Mitchell regarding prosecutorial misconduct was not raised because it was not part of the record. I received many copies of electronic mail between Mr. Durden and Mr. Mitchell. In petition exhibit 43, the issue regarding misconduct was a government witness contacting a defense expert. Based on the record in the direct appeal of the case, I could not conclude that this was a source of error sufficient to raise in a brief.

Government's Response, Exhibit B, page 7.

The Court previously explained in conjunction with Mitchell's eighth ineffective assistance of counsel claim that trial counsel hired an independent expert, B. J. "Bill" Fenoglio, who was a Certified Review Appraiser. The defense was hoping to call Fenoglio as an expert witness to demonstrate that the appraisals have been properly conducted, and that the values were supportable. Fenoglio was unable to provide such beneficial testimony. Irrespective of whether an agent contacted Fenoglio, counsel did not call him because he could not give testimony that was beneficial to Mitchell. Relief was not available in the context of an ineffective assistance of trial counsel claim due to the lack of prejudice. Relief is likewise unavailable in the context of ineffective assistance of appellate counsel

due to the lack of prejudice. Relief is also unavailable for reasons explained by appellate counsel. The issue was not preserved for appellate review. *See United States v. Weaver*, 527 F. App'x 323, 328 n.3 (5th Cir. 2013). Appellate counsel was not ineffective for failing to raise an issue that was not preserved for appellate review. He was not required to raise futile or frivolous grounds for relief. The fifteenth ineffective assistance of counsel claim lacks merit.

16. Mitchell next alleges that his appellate attorney was ineffective for submitting the appellate brief without first giving him the opportunity to review.

Counsel responded to the claim as follows:

I did not send Mr. Mitchell a draft version of the brief in this case. It has not been my practice to send a draft version of any brief on direct appeal to a client in advance of filing the brief with the court. I do this for several reasons. Appellate review is complicated with a standard of review, applicable law, and analysis and technical detailed which makes it extremely difficult, if not impossible to communicate to a client. A client could insist on including issues I believe, in my professional opinion, to be frivolous or even detrimental to his position. In most cases, appellate briefs are works in progress involving multiple drafts and changing though processes. A first draft is simply that, a draft. The final brief is the result of hours of work, research and analysis. In most cases each brief goes through at least two drafts and changes as the case is researched. The client's role and participation post-conviction in a direct appeal is dramatically different than during trial. Facts are very seldom brought forth by the client because the appellate review is governed by the facts in the record. Prior review of a draft would add nothing to the representation of the client, and is not effective.

Government's Response, Exhibit B, pages 7-8.

Mitchell provided no case law supporting a conclusion that appellate counsel's failure to give him the first chance to review the brief amounts to ineffective assistance of counsel. Moreover, counsel's explanation was reasonable. Mitchell likewise failed to show prejudice. He failed to satisfy his burden under *Strickland*. The sixteenth ineffective assistance of counsel claim lacks merit.

17. Mitchell next alleges that his appellate attorney was ineffective for failing to raise a claim about the false statement about his CPA license and the timing of the false statement to the jury.

Mitchell claims that his appellate attorney told him that it was immaterial to the case and refused to gauge the effect on the jury.

Mitchell's appellate attorney responded to the claim as follows:

> I was told about what Mr. Mitchell believed to be false statements made by AUSA Shipchandler during this case. However, as listed in petition exhibit 28, the witness was unable to confirm Mr. Shipchandler's questions. Exhibit 58, confirms that Mr. Mitchell had surrendered his license. Raising a specific issue on direct appeal that was not relevant to the issues raised would weaken Mr. Mitchell's brief in the eyes of the Court of Appeals, could be deemed frivolous. A failure to include a point of error that Mr. Shipchandler acted improperly by this line of questioning was not ineffective.

Government's Response, Exhibit B, pages 7-8.

The Court previously discussed this issue in the contest of an ineffective assistance of trial counsel claim in claim number nine. It should be recalled that Mitchell called Terry Lynn Webb as a character witness. When Webb testified that he did not believe that Mitchell would commit fraud and that he was honest, the Government advised the Court that it wanted to question Webb about whether he knew that the Mitchell had given up his CPA license because it was found that he failed to comply with generally accepted accounting principles. ECF 1395, 263. Trial counsel objected. *Id.* at 263-64. The Court found that Mitchell had opened up the issue of his character. *Id.* at 264. The Court overruled the objection, and the Government asked Webb if he knew that Mitchell had been investigated by the Board of Public Accountancy and that he had turned in his license. *Id.* at 266. Webb answer "no" to both questions. *Id.* The record is clear that Mitchell had given up his CPA license. AUSA Shipchandler received permission from the Court to explore this issue, and he stopped questioning Webb when Webb was unable to confirm the fact. Mitchell has not shown that his appellate attorney's performance was deficient for failing to present a ground of error based on Shipchandler's questions. Mitchell likewise failed to show a reasonable probability that, but for

appellate counsel's unreasonable failure to raise the issue on appeal, he would have prevailed on his appeal. The seventeenth ineffective assistance of counsel claim lacks merit.

18.     Mitchell's final ineffective assistance of counsel claim alleges that his appellate attorney was ineffective for failing to raise a *Brady* claim. As was fully explained in the discussion of claim number four, there was no *Brady* violation in this case. Mitchell has not shown that his appellate attorney's representation was deficient for failing to raise the issue. He likewise failed to show a reasonable probability that, but for appellate counsel's unreasonable failure to raise a *Brady* claim on appeal, he would have prevailed on appeal. Mitchell's appellate attorney was not ineffective for failing to raise the issue on direct appeal. The final ineffective assistance of counsel claim lacks merit.

In conclusion, having reviewed all of Mitchell's claims, the Court finds that the § 2255 motion lacks merit and that it should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Mitchell has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether Mitchell would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the

requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Mitchell's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the court find that Mitchell is not entitled to a certificate of appealability as to the claims raised.

<u>Recommendation</u>

It is recommended that Mitchell's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 be denied and the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 9th day of April, 2015.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE